## CONSOLIDATED UNDERWRITERS v. LOWRIE.

### No. 3448.

Court of Civil Appeals of Texas. Beaumont.

May 3, 1939.

Rehearing Denied May 17, 1939.

C. A. Lord, of Beaumont, for appellant.

Howell & Howell, of Beaumont, for appellee.

WALKER, Chief Justice.

This is a compensation case, prosecuted by appellant, Consolidated Underwriters, the insurer, from the final award of the Industrial Accident Board in favor of appellee, W. R. Lowrie, the employee; O. D. Hall was the alleged employer. Appellee alleged that his injuries were received in the following manner: "That the cross-plaintiff, W. R. Lowrie, was employed with others by O. D. Hall, to cut logs in the woods for the said O. D. Hall, who agreed and undertook to transport by truck the log cutters to and from their work in the woods, and in that connection, he furnished means of transportation; and that on or about the 6th day of July, 1937, about 5 P. M., the said W. R. Lowrie, while being transported from the place where he had been cutting logs in the manner above described, was, with other log cutters, riding on the top of a truck load of logs when the truck, which was traveling about twenty (20) miles or more per hour, passed under a large limb which was extending over the road, and the right side of the cross-plaintiff's head struck the said limb with such violence that the cross-plaintiff was knocked unconscious and would have fallen from the truck but for the timely assistance of others who were riding with him."

We give appellant's summary of its answer: "In answering the appellee's cross-action, the appellant pleaded the general denial, and specially alleged that if the appellee received any personal injuries as alleged by him, he was not at such time an employee of O. D. Hall, a subscriber, as alleged in the cross-action, and that he was not at the time he received the alleged injuries in the course of any employment with the said O. D. Hall, and that he was not covered by the terms and provisions of the policy of compensation insurance as alleged in the cross-action."

The jury found the following facts: On the 6th day of July, 1937, appellee was an employee of O. D. Hall, and "not an employee of W. S. Parker." On that day, as the result of an accident, he received "in the course of his employment," "a personal injury," which resulted in "total," "permanent" "incapacity." The "incapacity" sustained by appellee "was not temporary," nor did the injury result "in partial incapacity." The injuries sustained by appellee on the 6th day of July, 1937, were "the producing cause of his incapacity to work and earn money." Neither appellee nor any log cutter in or near Hardin County worked substantially 300 days during the year ending the 6th day of July, 1937. Appellee's "average weekly wage for the year ending July 6, 1937," "just and fair to both parties alike," was $16.875. On the verdict, appellee was awarded judgment "in the lump sum" of $3,439.28.

■ On the issue of "injury in the course of employment" appellant presents the following points: (1) The evidence was insufficient to support the jury's finding that appellee was injured in the course of his employment; (2) By introducing the depositions of Judge W. S. Parker, appellee was bound by his testimony, which was to the effect that appellee was an employee of Judge Parker and not an employee of O. D. Hall; (3) Exceptions to the court's charge submitting the issue. These contentions are overruled on the following statement of the evidence: Appellee was injured on the 6th day of July, 1937. He lived at Long's Station and was cutting logs on the Hays tract of land, about ten miles from his home. Riding a truck home from his work, on that day he was struck by a limb and injured. In March, 1937, he was employed by O. D. Hall as a log cutter, first on the Holland tract, then on the Bell tract, and then on the Hays tract. He was cutting logs on the Hays tract when he was injured. When first employed, appellee was paid by Hall seventy five cents per thousand for his logs, and Hall, as part of his contract and compensation, furnished him transportation from his home to his work and from his work back to his home. Appellee and the other log cutters sometime rode Hall's trucks, and sometime a truck owned and operated by one Freeman, who was a log hauler for Hall. He was riding Freeman's truck when he was injured. Under their contract with Hall, the log cutters could ride either truck. Mr. Hall knew that they rode both trucks according to their convenience; usually they rode the last truck to leave the woods, whether it belonged to Mr. Hall or Mr. Freeman, and both Mr. Hall and his log cutters accepted this method of transportation as being in discharge of his obligation to them to furnish them transportation. Appellee was injured in the manner plead by him. Hall employed appellee, and no one else had anything to do with his employment; he fixed his wages, directed his work, gave him instructions for cutting the logs, when to cut, where to cut, and the kind of logs to cut. The logs belonged to Judge W. S. Parker, but Mr. Hall had the cutting contract, and Judge Parker had nothing to do with employing the log cutters, or fixing their compensation, or furnishing them transportation. He neither hired nor fired them, nor claimed the power to exercise that right. He testified that Mr. Hall furnished him the daily scale of the logs cut, and he issued his check to each log cutter for the amount due him on the basis of compensation fixed by Mr. Hall. We quote Judge Parker's testimony:

"Q. Now then the arrangement for you to pay these log cutters direct was, I believe you state in here—you gave a certain reason for it. What reason did you have in making this payment direct? A. I didn't want any labor liens or encumbrances being placed on the timber before the money was paid for it—before it was paid for.

"Q. You didn't fix the rate of pay these men were to get? A. No, I had nothing to do with that.

"Q. And you merely passed out the money the other fellow furnished you, direct to the men who did the work, in order to avoid any labor liens. Is that right? A. That was my reason.

"Q. Did you pay the social security for any of these men? A. No, sir. * * *

"Q. Then you merely acted as the pay master to these log cutters, using the money that Mr. O. D. Hall had made arrangements for? A. Well, that is about the sum and substance of it.

"Q. In talking to the representative of Williams Lumber Company, your object was to ascertain if Mr. Hall, with whom you made the trade, could pay for your timber, had a market for it and funds available to pay. you as the timber was delivered? A. That was the principal object."

■ As we construe the testimony, as a matter of law appellee was an employee of Hall and not of Judge Parker. In defining the term "injury in the course of employment" the court gave the statutory definition. The charge was not affirmatively erroneous, and on the facts constituted a legal submission of the issue. This because, on the undisputed evidence, appellee was injured in the course of his employment.

■ The evidence did not establish, as a matter of law, that appellee and the other log cutters working in that territory had worked substantially 300 days in the year preceding his injury. He testified that he and his fellow log cutters "would average" four days work per week; again, that he worked approximately 20 days per month; again, that he lost 65 or 70 days out of his working days. The testimony of the time worked by him applied also to the work of those similarly employed. This testimony was sufficient to support the jury's verdict on these issues, and together with his testimony as to his earnings, the further finding that an average weekly wage of $16.875 would be "just and fair to both parties alike."

■ By question No. 5, the court submitted to the jury the issue of total incapacity. Appellant excepted to the question on the ground that it permitted the jury to take into consideration the loss of vision of appellee's right eye, "which is a specific injury and could not form the basis for any judgment as for total incapacity and could not be considered by the jury in arriving at the conclusion as to total incapacity, under the pleadings of cross-plaintiff, which do not seek recovery for any specific injury." As a result of the accident, appellee sustained injuries to his head, face, sinuses, antrums, a concussion of the brain, injury to the nerves in the right side of his face, and a specific injury to his eyes. Appellant's contentions is that, since the statute, Art. 8306, Sec. 12, provides specific compensation for injuries to the eye, the jury should not have been permitted to consider the injury to the eye in determining the issue of total, permanent incapacity. That contention is denied. The injury to the eye was only one element of the total incapacity. Appellee had the right to send to the jury all the injuries suffered by him as the basis of their answer to that question. Lumbermen's Reciprocal Ass'n v. Anders, Tex.Civ.App., 292 S.W. 265.

■ Dr. S. T. Wier examined appellee for his general injuries but did not examine his eyes, his sinuses and his antrums. On the advice of Dr. Wier, appellant had Dr. Hodges perform these examinations. Though Dr. Hodges made these examinations on the request of appellant, he was not called as a witness. On this statement it was not· error for appellee's counsel in his argument to call these facts to the jury's attention, and to argue "that there must be some reason for the appellant's failure to bring the witness to tell the jury what he had found in making his examination," and that it was reasonable to suppose "that Dr. Hodges would not do the appellant any good or it would have called him as a witness." This contention is overruled. In Missouri Pac. Ry. Co. v. White, 80 Tex. 202, 15 S.W. 808, 811, our Supreme Court said: "It is customary to permit attorneys to comment upon the absence of witnesses or their non-production, when they are shown to be cognizant of the facts in issue. It is a mere matter of argument, and may be discussed by either side, trusting to the good sense of the jury to properly estimate the value of such arguments. We are not prepared to say that any injury resulted to defendant by the course of the argument on this point, even if the argument was not properly deducible from the facts. Reversals will not be had merely because of sophistry in argument or fallacious reasoning upon the facts, when it does not appear that the jury were prejudiced thereby. There must, of necessity, be allowed some latitude in debate. The attorney may discuss his case from an erroneous standpoint, but his errors are not errors of the court; the jury is not bound to believe him, or to accept his

theories of the evidence. We do not find reversible error in this matter." See, also, Marek v. Southern Enterprises of Texas, 128 Tex. 377, 99 S.W.2d 594; Texas Indemnity Insurance Co. v. Dean, Tex.Civ.App., 77 S.W.2d 748; Houston Elec. Co. v. Potter, Tex.Civ.App., 51 S.W.2d 754; Reilly v. Buster, Tex.Civ.App., 52 S.W.2d 521; St. Louis, S. F. & T. Ry. Co. v. Green, Tex.Com.App., 37 S.W.2d 123; Houston E. & W. T. Ry. Co. v. Sherman, Tex.Com.App., 42 S.W.2d 241.

The judgment of the lower court is affirmed.