**TEX-JERSEY OIL CORPORATION et al.,**
Appellants,

v.

**Ernestine BECK, by Next Friend, et al.,**
Appellees.

No. 6882.

Court of Civil Appeals of Texas.

Texarkana.

June 28, 1956.

Rehearing Denied July 26, 1956.

Ramey, Calhoun, Brelsford & Hull, Tyler, Leachman, Gardere, Akin & Porter, Henry D. Akin, Dallas, for appellants.

Long, Strong, Jackson & Strong, Carthage, Smith & Smith, Tyler, for appellees.

FANNING, Justice.

This is a suit for damages for the death of Christine Beck and for pain and suffering of Christine Beck and her two minor children, Lorenzo Beck and Elizabeth Beck. Suit was brought under the survival and death statutes of Texas by Paul M. Branch, temporary administrator of the estates of Christine Beck, Lorenzo Beck and Elizabeth Beck, deceased, Ernestine Beck, a minor, by next friend, Abraham Jones, and by other parties named in plaintiffs' petition. Defendants in the suit were Tex-Jersey Oil Corporation, hereinafter referred to as Tex-Jersey, and Great Expectations Oil Company, hereinafter referred to as Great Expectations.

Defendants owned operating interests in and (with other co-owners) maintained and operated a tank battery, including two 500-barrel oil storage tanks in the City of Kilgore, Texas. On April 28, 1953, lightning struck, igniting a fire causing one of said tanks to explode, causing burning oil to spread igniting and burning a house located about 50 feet from such tank in which house Christine Beck and her three minor children lived, and Christine Beck and two of her minor children, Lorenzo Beck and Elizabeth Beck, were burned to death in such house, but one child, Ernestine Beck, escaped unharmed from the house.

In response to special issues submitted, the jury trying the case found in essence as follows: (1) That the act of defendants in storing crude oil in the tank which was not vapor proof at the time and place it was so stored on the occasion in question was a proximate cause of the explosion and the deaths of Christine Beck, Lorenzo Beck and Elizabeth Beck; (2) that defendants were maintaining a storage tank with open holes in the top, containing crude oil, at the time and place in question; (3) that such act of defendants was negligence, and

(4) was a proximate cause of the explosion and the deaths of Christine Beck, Lorenzo Beck and Elizabeth Beck; (5) that defendants' failure to equip the tank in question with a flame-proof vent was not negligence, and (6) was not a proximate cause of the explosion and deaths in question; (7) that defendants' failure to vent the tank in question through a riser, etc., was negligence, but (8) was not the proximate cause of the explosion and deaths in question; (9) that the accident in question was not due to an act of God, and (10) was not an unavoidable accident; (11) that $25,000 would fairly and reasonably compensate the minor plaintiff, Ernestine Beck, for the loss sustained as a result of the death of her mother, Christine Beck; (12) that $5,000 would fairly and reasonably compensate for the injuries suffered by Christine Beck from the time of the fire to the time of her actual death; (13) that $2,500 would fairly and reasonably compensate for the injuries suffered by Lorenzo Beck from the time of the fire to the time of his actual death; and that $2,500 would fairly and reasonably compensate for the injuries suffered by Elizabeth Beck from the time of the fire to the time of her actual death.

Grounded upon the jury's findings to the effect that the act of defendants in storing crude oil in a tank which was not vapor-proof was a proximate cause of the explosion and deaths in question and that the maintaining of the tank in question with open holes in the top was negligence and a proximate cause of the explosion and deaths in question, that the accident in question was not due to an act of God and was not an unavoidable accident, and further grounded upon the jury's response to the issues on damages, the trial court rendered judgment against both defendants in favor of Paul M. Branch as temporary administrator of the estates of Christine Beck, Lorenzo Beck and Elizabeth Beck, for $10,000, and in favor of Ernestine Beck for $25,000. Defendants in their amended motions for new trial, among other conten-

tions, alleged jury misconduct in that the jury had considered the cost of a college education in determining the amounts of damages to be assessed for Ernestine Beck; certain evidence with respect to such contention was adduced upon the hearing of the amended motions for new trial and at the conclusion of such hearing appellees filed a remittitur of $4,800 to be deducted from the $25,000 awarded to Ernestine Beck. The trial court, after reciting the filing of the remittitur in question, overruled defendants' amended motions for new trial. Tex-Jersey and Great Expectations have appealed.

Appellants by their Points 1 to 8, inclusive, contend in essence that the trial court erred in overruling their respective motions for instructed verdict and that the trial court erred in not holding that there was no evidence to support the jury's answers to Special Issues Nos. 1, 2, 3, 4, 9 and 10 of the court's charge. In their statement under these points in their brief appellants state:

"The argument under the first eight points is being grouped since they are all germane to each other. They present the contention that the evidence does not make out a case of liability against appellants since the uncontroverted evidence shows that the explosion and fire were caused by lightning and appellees failed to discharge their burden of showing beyond speculation and conjecture that lightning would not have produced the same or even more damaging results, regardless of whether the storage tank that exploded was vapor-proof or whether it had open holes in the top."

Plaintiffs in their trial petition, among other things, specifically pleaded that defendants were maintaining a partially filled crude oil storage tank with open holes in its top fifteen feet above the surface of the ground, the same not being a vapor-proof tank and allowing gases to escape therefrom in violation of the General Oil Ordinance of the City of Kilgore, Texas. Section 13 of the ordinance in question reads as follows:

"Section 13.

"That it shall be unlawful to use any storage tank which is not vapor proof and provided with check valves and which is not permanently connected to a foam generator in a manner approved by the fire chief of the City of Kilgore, nor shall any storage tank be constructed within fifty (50) feet of any building or street."

The fact that the tank in question was not vapor-proof was admitted by Tex-Jersey by failing to deny a requested admission. Great Expectations answered the requested admission as follows: "The same is too general to permit your defendant to answer either in the affirmative or the negative. Your defendant does say that the tank in question was not completely air tight." Appellants' position seems to be that no tank could be absolutely vapor-proof. Plaintiffs' witness Echols explained the meaning of the term "vapor-proof tank" in the oil and gas industry as follows:

"Q. Do you feel like those tanks can be made completely vapor proof? A. Well, we will have to qualify that in this respect. In a measure, there can't be a vapor-proof tank, as was explained in testimony this morning. It depends entirely on the pressure at which you qualify your statement of vapor-proof. We maintained thief lids that would hold about three to four ounces of pressure within the tank, and the same on the vent. Actually, the pressure at which the thief lid was opened, was a little higher than that in which the vapors were vented outside the vent going off the tank. Gas is just like water or any other fluid; it follows the course of least resistance, so that by maintaining your control, vapor control device on the vent in your tank, your vapors accu-

mulating within the tank are vented out through such opening."

Mr. Echols also referred to a "vapor-tite tank where there is no vapor permeating into the atmosphere."

We quote from the testimony of plaintiffs' witness Clark as follows:

"Q. On the usual construction of tanks, that thief hole has a cap on it, doesn't it? Kind of a weighted-balanced cap? A. Yes, sir.

"Q. When the pressure in the tank builds up, it will escape out that thief hole, will it not, and then when it is relieved, the thief hole will pop back down again? A. It would if there were no other means for it to escape."

Appellants' Superintendent, Ray Collum, while apparently familiar with the term "vapor-proof tank" expressed the opinion that the tank in question and no other bolted tank could be made absolutely vapor-proof, but did not testify that other types of tanks could not be made vapor-proof.

We think the facts are undisputed in this record that the tank in question was not vapor-proof as that term was frequently used and well understood in the oil and gas industry.

The jury in response to Special Issue No. 2, found that the tank in question had open holes in the top. Appellees contend that the cover on the manhole in the center of the top of the tank was loose and hanging by one bolt and was the open hole in question and that there were also other open holes. By failing to answer a requested admission, Tex-Jersey admitted that the tank in question was not sealed and contained open holes in its top. Great-Expectations answered such request for admission as follows:

"To Request No. V, your defendant answers that there was a two-foot manhole in the front of the top of

the tank; on the north side of the tank in the top there was a guage hole about six inches in diameter and covered by a spring lid or cover, which was intact and working, and to the defendant's knowledge the tank did not contain open holes in its top."

Plaintiffs' witness Essie Marie Mayfield, who lived in a house very near to the tanks, testified that on the date and occasion in question she heard a loud clap of thunder when the lightning struck and looked out her back window and saw fire in the center of the top of the tank. This witness further testified on cross-examination that lightning struck the tank and it was burning around that little hole there in the center. That the hole is called a manhole, and that the size of the hole was a little larger than a supper plate, and that the hole that she had testified was burning was big enough for a man's body to go down in it. Also the pictures introduced by plaintiffs as their exhibits 1 through 3, inclusive, and 12-A through 12-E, inclusive, afforded an ample opportunity for the jury to inspect the condition of the manhole and manhole cover during and after the fire, immediately following the explosion. Also the jury was afforded the opportunity of examining the manhole cover and tank top (which showed that the bolt holes had threads on them and had not been blown out) which had been cut from the top of the tank and brought into court and introduced in evidence as defendants' exhibit 8. Strong circumstantial evidence and the physical facts in the case also support the view that at the time of the fire and explosion in question, there was an open hole in the top of the tank, that there was a ring of open bolt holes around the tank top and that the manhole cover was loose and hanging on by only one bolt. We have carefully examined the record in this cause and it is our opinion that the answer of the jury to Special Issue No. 2 is sufficiently supported by evidence of probative force in this cause.

It is well established that where an injury flows from an act in violation of law it is negligence per se and is imputed to a wrongdoer or the one failing to do that which the law requires him to do. Alpine Tel. Corp. v. McCall, 143 Tex. 335, 184 S.W.2d 830; Herrin v. Falcon, Tex. CivApp., 198 S.W.2d 117, error ref. In Alpine Tel. Corp. v. McCall, supra [143 Tex. 335, 184 S.W.2d 833], it was held: "Valid ordinances of a municipal corporation must be observed, and a violation thereof constitutes negligence per se."

In Walker, Inc., v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506, 509, it is stated:

"From those who handle explosives, combustible gases, gasoline, petroleum, electricity, and similar dangerous commodities, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved."

In Thornton, The Law Relating to Oil and Gas, Vol. 2, p. 1064, it is stated:

"An oil company must keep its premises in such a condition that it will not be liable to lightly or easily catch fire, and thereby endanger properties near it. Thus where an oil company permitted its buildings and grounds to become soaked with oil, and also allowed a large number of 'jackets' used on oil cans and barrels to accumulate on the premises, so that a passing locomotive easily set them on fire, and the fire reached adjoining buildings and destroyed them, the oil company was held liable, for the reason that if it had kept its premises and buildings in a proper condition the fire would not have been started, and if started could have been controlled. In this case the plaintiff's buildings that were burned had been built after he knew of the condition of the oil company's premises and buildings; but this was held to make no difference. Nor would it have

made any difference if the plaintiff had previously sold the grounds to the company to use in their oil business."

It is our view that the use of the tank in question which was not vapor-proof was a violation of a valid ordinance of the City of Kilgore, Texas, and constituted negligence as a matter of law.

We further hold that the use of the tank in question with open holes in its top was negligence in fact as found by the jury in their response to Special Issue No. 3, which answer we hold was sufficiently supported by evidence of probative force in the cause.

Appellees contend that there was sufficient evidence to prove that the tank in question would not have exploded if it had been vapor-proof and had not contained open holes in the top. Appellants contend that the explosion and fire were caused by an act of God and also that same was an unavoidable accident. Appellants also contend in essence that the uncontradicted evidence shows that the explosion and fire were caused by a bolt of lightning, and whether open or shut, holes in the top of the tank contributed to, or detracted from the explosion, was left to surmise, etc. The witness, Mr. Echols, testified positively to the effect that if lightning struck a tank of crude oil which was not vapor-proof or vented that a fire would be started if the escaping vapors from the oil tank were struck by lightning. The appellants also on cross-examination asked Mr. Echols if he had a theory about how the fire occurred, and he testified as follows:

"Q. If, as you seem to assume, the lightning ignited the vapors escaping from around the thief hole cover? A. I don't know where they came from.

"Q. Isn't that the assumption you are making as to how this occurred? A. I don't know what occurred.

"Q. Well, you got a theory about it? A. Yes, sir; if you want me to explain it, I will be glad to.

"Q. I would like to hear it. A. May I assume that the photographs I have seen correctly portray the conditions?

"Q. You may make any assumptions you want to in connection with your theory, sir. A. All right. My assumption would be that either—that at the time the lightning struck, and the tank exploded that either the manhole cover on the tank which exploded was merely fastened by one bolt, and the flash or bolt of lightning ignited the vapors escaping from around that man-hole; or, that the vapors escaping from the second ring of holes shown in the man-hole, the lightning struck those vapors and ignited them, and the flame was transmitted into the tank bringing the crude oil up to the flash point where additional vapors were dissipated, resulting in the explosion."

Pursuant to requests for admissions, Tex-Jersey by its failure to answer, also admitted that oil was stored in the tank in question, that said tank on the date in question was struck by lightning, that said tank exploded and burned, that burning oil spread to and set on fire the dwelling house in question and that Christine Beck, Lorenzo Beck and Elizabeth Beck were burned to death in said house. Great Expectations in their answers to the request for admissions also admitted that the tank in question was struck by lightning, that the oil contained in the tank was set on fire and did partially burn, that the burning oil spread to and set on fire the dwelling house that the said Becks were then in and that Christine Beck, Lorenzo Beck and Elizabeth Beck were burned to death in said house.

There was positive testimony from the witness Essie Marie Mayfield that the fire was located in an open hole or holes in the top of the tank immediately prior to the explosion. There was strong circumstantial evidence to the effect that the tank top or manhole cover was not bolted down as it should have been and that there was a ring of open bolt holes around the top of the tank. It is well known that lightning will strike and will ignite escaping gas vapors from crude oil and the record reveals that vapors escaping from crude oil tanks are dangerous, are subject to ignition causing fires and explosions. The witness Mr. Echols testified that a closed tank which did not allow gas to escape into the atmosphere would not explode even if struck by lightning; that the heat created by a stroke of lightning would be dissipated if the tank were properly grounded, and that oil and gases inside the tank would not be raised to a sufficient temperature to ignite them. Mr. Echols testified on re-direct examination as follows:

"Q. Mr. Echols, I didn't ask you on direct examination, I don't believe, enough to bring out fully the question of grounding of those tanks from the effect of lightning; I will ask you this question. Would or not a steel tank, metal tank, of the size that would hold five hundred barrels of oil sitting on the ground, connected with the pipeline and with the gun barrel and the separator and with the vent pipe that ran out and tied to the vent pipe of the adjoining one, then ran to the ground be a sufficient ground against electricity or lightning? A. I think that it would probably be adequate providing there were no vapors escaping on top of the tank which could be ignited prior to the grounding of the flash of lightning."

Appellants' witness Paul Williams, as well as appellees' witness W. M. Clark, testified as to circumstances indicating lightning had set fire to gas escaping from other tank batteries in the City of Kilgore on several other occasions. There was no

testimony offered by appellants that the lightning on this occasion in the City of Kilgore or that immediate vicinity was without precedent or unusual in any respect.

In 38 Am.Jur., Negligence, Sec. 75, it is stated:

· "*Natural Forces or Conditions; Act of God.—*

"One who is himself without fault has, in justice and common fairness, a right to recover from one who has caused him loss by a negligent act, although an ordinary natural occurrence entered into the chain of events which culminated in the loss. If negligence is of a character which according to the usual experience of mankind is likely to afford an opportunity for the intervention of a natural cause, an injury caused by the negligence in conjunction with the natural cause is the proximate result of the negligence, although the particular details of the damage cannot be anticipated accurately. The ordinary conditions or forces of nature, such as ordinary wind, cold, heat, and the like, that are usual at the time and place and under the circumstances, and that reasonably should have been expected or foreseen as probable to occur, are not in general, independent, efficient causes where they affect or operate on a negligent act or omission in causing a result. Those who are negligent are held in law to know the usual effect of ordinary natural conditions and forces on a negligent act or omission, and to have contemplated the appearance and the effect of such conditions and forces on their negligence or on its proximate results, and to be liable in damages for the natural and probable results of the negligence. The fact that the wind changes direction during the course of a fire negligently started by a person does not relieve him of responsibility for the destruction of the prop-

erty to which the flames are carried after such change in the wind. \* \*"

In Ft. Worth & D. C. Ry. v. Kiel, 143 Tex. 601, 187 S.W.2d 371, it was held:

"Railway company's negligence in constructing and maintaining a structure over a stream, concurring with an extraordinary and unprecedented flood causing damage to another, makes the railway company liable for damages, notwithstanding fact that the flood was extraordinary and unprecedented. Vernon's Ann.Civ.St., art. 6328."

We hold that there was sufficient evidence of probative force in this cause to support the jury's findings in response to Special Issues Nos. 1, 2, 3, 4, 9 and 10. We also hold that the trial court properly overruled defendants' motions for instructed verdict.

■ Appellants further contend that the judgment against Great Expectations should be reversed because the uncontradicted evidence showed that Tex-Jersey was in full charge of the operations on the Alexander lease. This contention is without merit since the fact that Tex-Jersey and Great Expectations were joint operators was admitted by the admissions served on Tex-Jersey which were not answered and therefore admitted, and as also more fully shown by request for admissions served on Great Expectations Nos. II, III, VI and VII and its answers thereto.

Appellants' Points 1 to 8, inclusive, are respectfully overruled.

Appellants by their Points 9 to 14, inclusive, contend that the trial court erred in not holding that the answers of the jury to Special Issues Nos. 1, 2, 3, 4, 9 and 10 were against the great weight and overwhelming preponderance of the evidence. We have carefully considered all of the evidence in the record and respectfully overrule appellants' Points 9 to 14, inclusive.

Appellants by their 15th point contend that the trial court erred in submitting Special Issue No. 1 over their objections. Among their objections defendants contended that the General Oil Ordinance of the City of Kilgore, and Sec. 13 thereof in particular, were unconstitutional and void. The ordinance in question with the accompanying stipulations relating to the passage thereof cover 19 pages in the statement of facts and are too lengthy to quote here. Likewise appellants' contentions in this regard are also numerous and lengthy. We have carefully examined and considered these contentions and are of the opinion that they are without merit and that the ordinance in question was valid and constitutional. Appellants' other objections to the submission of Special Issue No. 1 are also deemed not to present reversible error under this record. Appellants' 15th point is respectfully overruled.

In addition to their 15th point ruled on above by us, appellants by their 16th to 21st points, inclusive, and by their 24th, 28th and 38th points contend that the trial court erred in overruling various objections to the trial court's charge. Appellees contend that there were no errors committed by the trial court and further counter with the contention that the objections of appellants to the court's charge were so obscured and concealed by voluminous objections and minute differentiations that same should not be considered because same were not in compliance with Rule 274, Texas Rules of Civil Procedure. Appellees in support of this contention, among others, cite the following authorities: 3-A Tex.Jur., 241, Sec. 184; Frozen Foods Express v. Odom, Tex.Civ.App., 229 S.W.2d 92, error ref., N.R.E.; Edwards v. Gifford, 137 Tex. 559, 155 S.W. 2d 786; Chase Bag Co. v. Longoria, Tex. Civ.App., 45 S.W.2d 242, error dis.; Dean v. Safety Cas. Co., Tex.Civ.App., 190 S.

W.2d 750, error ref., W.O.M.; Gulf C. & S. F. Ry. Co. v. Bouchillon, Tex.Civ.App., 186 S.W.2d 1006, error ref., W.O.M.; Driver v. Worth Const. Co., Tex.Civ.App., 264 S.W.2d 174, reversed on other grounds in Tex.Civ.App., 273 S.W.2d 603. Appellants' objections are rather lengthy and voluminous, comprise 15 pages in the transcript and are written in 16 unnumbered paragraphs. While perhaps there may be merit to some extent in appellees' contention that appellants' objections to the court's charge are not in conformity with Rule 274, we have, however, carefully examined and considered appellants' points above referred to and have reached the conclusion that same do not present reversible error under this record. Appellants' Points 16 to 21, inclusive, 25, 28 and 38 are respectfully overruled.

Appellants' remaining points have been carefully considered, are deemed not to present reversible error under this record, and are respectfully overruled.

We have carefully considered all of appellants' points in the light of the record as a whole in this cause and are of the opinion that the matters complained of by appellant were not reasonably calculated to cause and did not probably cause the rendition of an improper judgment in this cause. Rules 434 and 503, T.R.C.P.; 31 Tex.Law Review 1; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S. W.2d 596; Walker v. Texas Employers Ins. Ass'n, Tex., 291 S.W.2d 298; Mason v. Yellow Cab & Baggage Co., 153 Tex. 344, 269 S.W.2d 329; Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404; Whitener v. Traders & General Ins. Co., Tex., 289 S.W.2d 233.

The judgment of the trial court is affirmed.

Affirmed.