TEX-JERSEY OIL CORPORATION ET AL v. ERNESTINE BECK, BY NEXT FRIEND, ET AL

No. A-6009. Decided July 24, 1957.
Rehearing overruled October 2, 1957.
(305 S.W. 2d Series 162.)

542

*Ramey, Calhoun, Brelsford & Hull,* of Tyler, *Leachman, Gardere, Akin & Porter* and *Henry Akin, Sr.,* all of Dallas for petitioners.

*Long, Strong, Jackson & Strong,* and *J. E. Jackson,* of Carthage, *Smith & Smith* and *Troy Smith,* of Tyler, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is a suit for damages instituted by Ernestine Beck, minor, by next friend, Abraham Jones, for the death of her mother, Christine Beck, and by Paul M. Branch, Temporary Administrator of the Estates of Christine Beck, deceased, Lorenzo Beck, deceased, and Elizabeth Beck, deceased, for their conscious pain and suffering. Lorenzo Beck and Elizabeth Beck were also minor children of Christine Beck. The defendants, petitioners here, are Tex-Jersey Oil Corporation and Great Expectations Oil Company.

The petitioners jointly operated and maintained a tank battery, including two 500-barrel oil storage tanks surrounded by a fire wall, within the city limits of Kilgore, Texas. Christine Beck and her three minor children occupied a house which was within fifty feet of the oil storage tanks. On the afternoon of April 28, 1953, a bolt of lightning struck one of the oil storage tanks causing it to explode and throw burning oil over the fire wall and upon many residences in the near vicinity. The Beck dwelling was set ablaze, trapping and burning to death Christine Beck and her two minor children, Lorenzo and Elizabeth. The third child, Ernestine Beck, escaped from the fire unharmed. Respondents offered evidence that the bolt of lightning ignited vapors escaping from holes in the top of the tank and that the tank did not explode until the escaping vapors had been burning for a short period of time.

The jury, found in answer to fourteen special issues, that the storage of the oil in a tank which was not vapor proof was a proximate cause of the explosion and deaths in question; that the maintaining of a tank, containing crude oil, with holes in the top was negligence and a proximate cause of the explosion and the deaths; that the accident was not due to an act of God and was not an unavoidable accident; that $25,000 would reasonably compensate Ernestine Beck for the death of her mother; that $5,000 would reasonably compensate for the mental and physical pain suffered by Christine Beck from the time of her injury to the time of her death; and that $2,500, each, would reasonably compensate for the mental and physical pain suffered by Lorenzo and Elizabeth Beck from the time of the accident to the time of their deaths. Based upon these answers, the trial court rendered judgment against both defendants and awarded $25,000 to Ernestine Beck and $10,000 to Paul M. Branch, Temporary Administrator of the Estates of Christine Beck, Lorenzo Beck and Elizabeth Beck. After a hearing on petitioners' amended motions for new trial, the respondents filed a voluntary remittitur of $4,800, to be deducted from Ernestine Beck's recovery of $25,000, because the evidence established that the jury discussed and awarded that amount as the cost of a college education in assessing damages in favor of Ernestine Beck for the death of her mother. Upon filing of the remittitur, the trial court overruled the amended motions for new trial and petitioners appealed. The Court of Civil Appeals affirmed. 292 S.W. 2d 803.

Petitioners bring forward twelve points of error. To sustain any one of the last nine of the points would vitiate the entire

judgment. To sustain any one of the first three of the points would vitiate only that part of the judgment which runs in favor of Ernestine Beck. We will first dispose of the points which, if sustained, would vitiate the entire judgment.

■ Point 12 asserts fundamental error in the failure of respondents to make the father of Christine Beck a party to the suit or to account for his absence as a party. The father of a deceased person is one of the beneficiaries under Article 4675, R.C.S. of Texas, 1925, the Wrongful Death Statute. There is no mention in the pleadings or the evidence of the existence or non-existence of Christine Beck's father. The question was not raised by plea in abatement, special exception, or other pleading or motion in the trial court. In this condition the record does not present fundamental error which may be raised initially in this Court. St. Louis Southwestern Ry. Co. of Texas v. Anderson, Texas Civ. App., 206 S.W. 696, 698, writ refused; Ramsey v. Dunlop, 146 Texas 196, 205 S.W. 2d 979. In the cases on which petitioners rely reversal was ordered on a record showing the existence of beneficiaries who were not joined as parties and whose absence as parties was not accounted for.

■ In answer to special issues Nos. 2, 3 and 4 the jury found that petitioners maintained a storage tank, containing crude oil, with open holes in the top, that the maintenance of such a storage tank containing crude oil was negligence, and that such negligence was a proximate cause of the explosion and the deaths of Christine Beck, Lorenzo Beck and Elizabeth Beck. Petitioners' points 8, 9, 10 and 11 present, in one form or another, the contention that there is in the record no evidence of probative value to support the jury's findings to the foregoing issues. Much of the evidence bearing on these issues is set out at length in the opinion of the Court of Civil Appeals. 292 S.W. 2d 805-809. No good purpose would be served by repeating it in this opinion. We are satisfied that there is evidence of probative value supporting the jury's findings to special issues 2, 3 and 4, and accordingly overrule petitioners' points 8, 9, 10 and 11.

■ The storage tanks in question were within the city limits of the City of Kilgore. Kilgore has a city ordinance making it unlawful to use storage tanks which are not vapor proof. In response to Special Issue No. 1 the jury found that the act of petitioners in storing oil in a tank which was not vapor proof was a proximate cause of the explosion and the deaths of Christine Beck, Lorenzo Beck and Elizabeth Beck. Petitioners' Point 7 asserts that liability may not be predicated

on the answer to Special Issue No. 1 because the issue was fatally defective in that it was multifarious and commented on the weight of the evidence and because the ordinance in question is invalid. Inasmuch as we have held that petitioners' liability may be predicated on the jury's answer to Special Issues 2, 3 and 4 the defects, if any, in Special Issue No. 1 and the invalidity of the ordinance become immaterial. Point 7 is accordingly overruled.

■ By Special Issue 9 the jury was asked whether it found, from a preponderance of the evidence, that the accident in question was not due to an act of God. In connection with the issue the jury was instructed that by the term "ACT OF GOD" was meant "that when the injuries are due directly and exclusively to natural causes, without human intervention, and no amount of foresight or care which could have been reasonably required of the defendants could have prevented the injuries, they should be regarded as an act of God." Petitioners' Point 6 asserts that the definition given imposed on petitioners a greater burden than the law required of them. The issue imposed no burden on petitioners. It placed the burden on respondents to prove that the accident was *not* due to an act of God. The point is overruled.

■ In Point 5 petitioners complain of the failure of the trial court to include the element of "new and independent cause" in its definition of "proximate cause." The failure in the respect mentioned was not error unless there is evidence in the record raising the issue of new and independent cause. Young v. Massey, 128 Texas 638, 101 S.W. 2d 809.

There is no evidence in the record of any independent act, omission, object or force, other than the bolt of lightning, which could have been a new and independent cause of the explosion. Moreover, under the record before us the bolt of lightning could not have been a new and independent cause thereof. Respondents' theory of the explosion is that the bolt of lightning ignited vapors which petitioners negligently permitted to escape from the tank and that the fire caused the explosion. If that theory be correct then the bolt of lightning was a concurring cause and not a new and independent cause of the explosion. Texas Public Service Co. v. Armstrong, Texas Civ. App., 37 S.W. 2d 294, writ refused; Texas Power & Light Co. v. Culwell, Texas Com. App., 34 S.W. 2d 820; McAfee v. Travis Gas Corp., 137 Texas 314, 153 S.W. 2d 442, 447; Walker v. Burgdorf, 150 Texas 603, 244 S.W. 2d 506, 50 ,; Luther Transfer & Storage, Inc. v.

Walton, 156 Texas 482, 296 S.W. 2d 750. Petitioners' theory of the explosion was that it was caused by the bolt of lightning striking the storage tank and not by its igniting vapors which were escaping from the tank. If that theory be correct the bolt of lightning was the sole proximate cause of the explosion, having no connection whatever with petitioners' negligence. That theory was submitted to the jury, in effect, by Special Issue No. 9 and was found against petitioners. There is no contention and no evidence to support a holding that the facts give rise to a reasonable inference that the explosion was proximately caused by any other means or in any other manner. Petitioners' Point 5 is accordingly overruled.

By their Point 4 petitioners seek a reversal of the judgment because of improper argument of respondents' counsel. To evaluate the argument it must be considered in its proper factual background. The storage tank had a manhole about two feet in diameter at its top. There was a rim around the edge of the manhole with some thirty or thirty-five holes in it for bolting on a lid or plate which, in turn, had holes for bolting and also had a hole in its top two and one-half inches in diameter encircled with a collar one and one-half inches high. A pipe fitted into the collar. The evidence justified an inference that at the time the lightning struck the pipe was not in the collar and that only one bolt was in place in the bolt holes for holding the lid or plate over the manhole. Respondents' theory was that the holes were open, that vapors escaping therefrom were set ablaze by the lightning and that the fire caused the explosion. Petitioners' superintendent testified that at the time of the explosion a pipe was screwed into the collar and, inferentially, that the lid or plate was properly bolted over the manhole. He testified further, however, that the lid was sometimes removed to let out all vapors when they had the tank cleaned and that one James Allen was the last man to clean the tank before the explosion. After respondents rested their case petitioners called their witnesses, among whom was Allen, and had them sworn. Allen did not testify. In this setting respondents' counsel made the following statements in his closing argument:

"They testified here in this case that this cap was on there and screwed down tight; that at the time it was inspected last, that the last man that would have to do with taking it off was the tank cleaner. Where was the tank cleaner? Now, I ask you why didn't they produce the tank cleaner. If he is the man who could testify that it was put back on there and screwed down tight, he was available, they had him under oath to tell the

truth and they didn't bring him in there before you. I don't know what inferences are to be drawn from it, but you, Gentlemen, have a right to draw any reasonable inference you want from it; but we do know this: that under the circumstances—there is no testimony here that he did not put that cap back there like they say it should have been put. There is not a line of evidence here."

Petitioners objected to the argument on the ground that the witness, being present in the courtroom, was as available to respondents as he was to petitioners. The objection was overruled. The question we must decide is whether it was improper for counsel for respondents to comment on the failure of petitioners to place the witness Allen on the stand. We have concluded that the comment was not improper.

■ No good purpose would be served by reviewing the great multitude of improper argument cases which abounds in the law books. Since a very early date it has been held that counsel may comment in argument on the failure of the opposite party to call a witness employed by him. Missouri Pac. Ry. Co. v. White, 80 Texas 202, 15 S.W. 808, 810-811; Houston E. & W. T. Ry. Co. v. Boone, 105 Texas 188, 146 S.W. 533, 535; Houston E. & W. T. Ry. Co. v. Sherman, Texas Com. App., 42 S.W. 2d 241, 245 (holding approved); Consolidated Underwriters v. Lowrie, Texas Civ. App., 128 S.W. 2d 421, 423, writ refused; Marek v. Southern Enterprizes, 128 Texas 377, 99 S.W. 2d 594, 597; Meyer v. Great American Ind. Co., 154 Texas 408, 279 S.W. 2d 575, 579. The right to such comment has not been conditioned on the unavailability of the witness to the party so commenting, Houston E. & W. T. Ry. Co. v. Boone, supra, or on the employment of the witness at the time of trial. Marek v. Southern Enterprizes, supra; Meyer v. Great American Ind. Co., supra; Consolidated Underwriters v. Lowrie, supra. If the residence of a witness is known to all parties he is *legally* equally available to all parties as a witness whether he is in the courtroom at the time of trial or not. If he lives in the county of trial he may be brought in as a witness by subpoena and if he lives out of the county he may be called as a witness through deposition process. The right to comment on the failure to call and use an employee-witness does not grow out of the unavailability of the witness but out of his relationship with the opposite party. We think it sound to hold that it is not improper for counsel to comment in argument on the unexplained failure of the opposite party to call as a witness and offer the testimony of one who the record shows to be legally available, and who,

while employed by such party, obtained or was clearly in a position to obtain material information on a point at issue in the litigation. Measured by this rule the argument above set out was not improper. We are not to be understood as holding that counsel may undertake to tell the jury what testimony the witness would give. That would clearly be improper as getting unsworn testimony before the jury. Point 4 is overruled.

There remains for consideration the three points which, if sustained, would vitiate only the judgment in favor of Ernestine Beck.

■ Point 1 is, in substance, that there was no evidence upon which the jury could intelligently answer the issue on damages in favor of Ernestine Beck. The evidence is meager indeed, but as we analyze the point, the evidence and the court's charge the attack is really directed at the sufficiency of the evidence, a question over which this court has no jurisdiction. The Court of Civil Appeals has held that the verdict is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong. That holding is binding on this court.

Point 2 urges a reversal of the judgment because of misconduct of the jury in discussing unauthorized elements of damages and in making an award therefor.

Special Issue 11 asked the jury to find, from a preponderance of the evidence, what amount of money, if paid in cash, would fairly and reasonably compensate Ernestine Beck for the loss sustained by her as a result of the death of her mother. In connection with the issue the jury was instructed that in arriving at their answer they could *only* consider the pecuniary value to Ernestine Beck of "motherly care, guidance, counsel, advice and education" that she had a reasonable expectation of receiving from her mother until she reached twenty-one years of age. It thus appears from the charge that the only elements of damage which the jury was authorized to evaluate were the tangible elements of motherly care, motherly guidance, motherly counsel, motherly advice and motherly education. They were not authorized to award any amount as damages for contributions which the mother would have made toward the support, maintenance and formal education of Ernestine. That there is a difference between tangible and intangible elements of damages is recognized in Gulf C. & S.F. Ry. Co. v. Younger, 90 Texas 387, 38 S.W. 1121, 1123, where, in discussing the elements

of damages recoverable by a minor child for the loss of a mother, this court quoted from Tilley v. Hudson River Railroad Co., 24 N.Y. 471, 476, as follows: "But infant children sustain a loss from the death of their parents, and especially of their mother, of a different kind. She owes them the duty of nurture, and of intellectual, moral and physical training, and of such instruction as can only proceed from a mother. This is, to say the least, as essential to their future well-being in a worldly point of view, and to their success in life, as the instruction in letters and other branches of elementary education which they receive at the hands of other teachers who are employed for a pecuniary compensation * * *." See also St. Louis Southwestern Ry. Co. v. Anderson, Texas Civ. App., 206 S.W. 696, 701, writ refused.

Five jurors testified at the hearing on the motion for new trial. That the jurors discussed and awarded damages to provide for the support, maintenance and education of Ernestine Beck through high school and college is made clear by the testimony. The testimony was so clear and conclusive that the jury discussed and made an allowance as damages of the sum of $4800 to provide Ernestine with a college education that counsel for respondents tendered a remittitur of that sum. The testimony is equally clear that the jury discussed and awarded damages for the purpose of providing Ernestine with support and maintenance until she was twenty-one years of age and with a public school education through high school. There was no evidence of the earnings of Christine Beck or of the amount expended by her for the support and maintenance of Ernestine. Neither was there evidence of the mental development of Ernestine, the type of student she was or that in all reasonable probability her mother would have provided for her while and until she received a high school education. More important, the court's charge did not authorize an award of damages based on the considerations discussed by the jury and for which damages were awarded. The charge, as heretofore stated, authorized an award of damages *only* to the extent of the pecuniary value of the intangible elements of advice, counsel, care, education, etc. which Christine Beck would have given Ernestine as her mother.

■ We know of no way by which this court can separate the unauthorized damages awarded by the jury from those which were authorized. Accordingly, it must be held that it reasonably appears from the evidence on the hearing of the motion for new trial and the trial of the case and from the record as a whole

that the misconduct probably resulted in injury to petitioners. Rules 327, 434 and 503, Texas Rules of Civil Procedure.

The judgment of $20,200 in favor of Ernestine Beck must be reversed. The judgment in favor of the temporary administrator of the estates of Christine Beck, Lorenzo Beck and Elizabeth Beck represents a separate and severable item of recovery, is not tainted by the misconduct of the jury and may be permitted to stand. Rule 503, Texas Rules of Civil Procedure. Lowery v. Berry, 153 Texas 411, 269 S.W. 2d 895, 797; Dallas Ry. & Term. Co. v. Gossett, 156 Texas 252, 294 S.W. 2d 377, 383; Pennell v. United Insurance Co., 150 Texas 541, 243 S.W. 2d 572.

Petitioners' Point 3 complains of the failure of the trial court's charge affirmatively to instruct the jury that they could not consider sorrow and grief and loss of companionship or love and affection in assessing damages in favor of Ernestine Beck. We need not decide whether the failure to so instruct would require a reversal in the light of the particular language used in the charge. If the case is re-tried the court should give an affirmative exclusionary charge such as that requested. International & G. N. Ry. Co. v. McVey, 99 Texas 28, 87 S.W. 328, 329; Gulf C. & S. F. R. Co. v. Farmer, 102 Texas 235, 115 S.W. 260, 261; Hines v. Kelley, Texas Com. App., 252 S.W. 1033, 1034-1035; Burlington-Rock Island Ry. Co. v. Ellison, Texas Civ. App., 134 S.W. 2d 306, 307, writ refused.

The judgments of the Court of Civil Appeals and of the trial court are affirmed in part and in part reversed and the cause remanded as herein indicated. Costs are divided equally between the parties.

Opinion delivered July 24, 1957.

Rehearing overruled October 2, 1957.