**Myrvin Herbert GIFFORD, Appellant,**

v.

**Ted R. WOODRUFF, Appellee.**

No. 7117.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 18, 1969.

Motion for Rehearing Overruled

Jan. 8, 1970.

Foreman, Dyess, Prewett, Henderson & Cantey, Houston, for appellant.

Thomas & Stewart, Angleton, for appellee.

STEPHENSON, Justice.

This is an action for damages for personal injuries arising out of an automobile-pedestrian accident. Judgment was rendered for plaintiff upon the jury verdict. The parties will be referred to here as they were in the trial court.

Plaintiff, Ted Woodruff, was struck by an automobile driven by defendant, Myrvin Gifford, while plaintiff was walking across a four-lane street in the City of West Columbia. The jury found: Defendant was guilty of negligence in failing to keep a proper lookout, and failing to turn his car to the right, and that each was a proximate cause of the collision. That plaintiff was crossing the roadway at a place other than a crosswalk, and failed to yield the right-of-way to defendant, which was negligence, but did not find such negligence to be a proximate cause of the collision. That plaintiff failed to keep a proper lookout for defendant, but did not find such failure to be a proximate cause of the collision. The jury also did not find defendant failed to make a proper application of his brakes, or that defendant was driving at an excessive rate of speed.

Defendant's first point of error is that the trial court erred in refusing to sustain

defendant's objection to plaintiff's argument to the jury commenting upon defendant's failure to call as witnesses the police officers and ambulance driver. The record shows defendant asked the court to instruct the jury to disregard this argument, which was refused.

This court passed upon this question in Claybrook v. Acreman, 373 S.W.2d 287, 291 (Beaumont Civ.App., 1963, error ref., n. r. e.), with the following statement of law:

"Our courts have uniformly held that the omission of a party to produce important testimony relating to a fact of which he has knowledge, and which is purely within his control, raises the presumption that the testimony, if produced, would be unfavorable. A review of the cases on this point has brought us to these conclusions: First, an attorney may comment upon the failure of his adversary to call as a witness a person who was in his employ at the time the cause of action arose, if such person was in a position to acquire material information. Second, if the missing witness referred to is not an employee, then he must stand in some special position to such adverse party to predispose him to favor such adverse party. And, third, the word 'available' does not mean that the missing witness must be within the jurisdiction of the court so that he can be reached by subpoena, but means that the witness can be located so that he can either be served by a subpoena or his testimony secured by deposition. Tex.—Jersey Oil Corp. v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062."

The following argument was made to the jury by counsel for plaintiff:

"Nos. 10 through 15 are so worded that the burden of proof is upon the defendant, upon Mr. Cantey from Houston. He has the burden of bringing you fifty-one per cent of the total picture and convince you as jurors that the accident happened the way he said it happened, and to sustain his burden of proof, taking the testimony of his witnesses, he has got to prove to you by fifty-one per cent of the evidence that the accident happened on this side of Sixteenth Street rather than that side, and it would have been so easy for Mr. Cantey to have sustained his burden of proof, and I know you wondered about it for hours, where are the investigating officers who measured the skid marks and talked with the witnesses * * *

*     *     *     *     *     *

"As I said, the burden of proof is on me on Special Issues 1 through 9; the burden of proof is on Mr. Cantey on Special Issues 10 through 15, and all doubt could have been resolved in your mind and my mind as to where the accident happened. Did Mr. Woodruff cross at some other place than a crosswalk, who would be the best persons and what would be the best evidence of that? All you have to do is put an investigating officer on the stand and I asked Myrvin * * *

*     *     *     *     *     *

"I asked him this morning if he knew Ronnie Martin and he said Yes, and I asked did Ronnie come out after the accident and he said Yes; was he there long enough to observe the skid marks and he said Yes; did he observe Mr. Woodruff lying in the street and he said Yes. Where is Ronnie Martin, why didn't he bring him? He has the burden of proof on the issues for fifty-one per cent. Is there something he would have told you that he is scared of, the City Policeman of West Columbia would have told us [what] he is scared of?

*     *     *     *     *     *

"Where are the officers that made the investigation? It would have been so easy to tell where the skid marks were, where Mr. Woodruff was lying unconscious, where is the ambulance driver that picked the body up? They haven't sustained their burden of proof. It is

one thing for a lawyer to conduct experiments on what is possible and another thing to bring live witnesses and put on the stand and tell you under oath what the facts are. You know, many times the absence of evidence speaks louder from the witness stand, and we have a perfect example of it in this lawsuit. It wasn't my burden to disprove the allegations they made. No, sir, the burden of proof is on the defendant to prove to you by a preponderance of the evidence, and they failed to do it because they would not bring one single officer and the ambulance driver."

■ Neither the investigating officers nor the ambulance driver were employees of defendant, and they were not shown to be in such special position to defendant as to predispose them to favor defendant. It was error for plaintiff to argue to the jury that defendant's failure to call such witnesses resulted in some implication that those witnesses would have given unfavorable testimony.

A review of the evidence is necessary in order to determine whether or not such error was reversible error. The record shows this incident occurred between 7:30 and 8:30 p. m. on a dark night on the main street of West Columbia. According to plaintiff's testimony, he was crossing the street at an intersection and while standing on the centerline waiting for cars to pass he was struck by defendant's car. Although he maintained he was standing on the centerline, plaintiff testified that he did not see defendant get out of his lane of traffic. According to defendant's testimony, he was driving down the main street in the inside lane about 15 to 20 miles per hour and saw plaintiff for the first time about 20 to 30 feet ahead of him in his lane of traffic at a point before he reached the intersection. Defendant testified he immediately applied his brakes and slid into plaintiff, and that the lights of an oncoming automobile interfered with his seeing plaintiff. A review of the testimony of all witnesses makes it uncertain as to where the impact took place, both as to the centerline and the intersection. Mr. Crocker, a witness called by plaintiff, testified that plaintiff was close to the centerline, but about two-thirds of a block from the intersection. Mr. Sims, a witness called by defendant, testified in effect that the impact occurred between a car length and a length and a half from the intersection, but could not tell where plaintiff was standing in reference to the centerline before the impact. Mrs. Bertram, a witness called by defendant, testified the impact was about 60 feet from the intersection in defendant's lane of traffic. Considering the record as a whole, we have concluded the argument made by counsel for plaintiff was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. Rule 434.

■ Defendant has other points of error contending that the failure of the jury to find that plaintiff's negligence (in crossing at a place other than a crosswalk and failing to yield the right of way, and also in failing to keep a proper lookout) constituted the proximate cause of the accident was contrary to the great weight and preponderance of the evidence. Considering the record as a whole, including the evidence set forth above, we have concluded such answers of the jury were clearly wrong and manifestly unjust.

Reversed and remanded.