**Louis F. ROTHERMEL, Individually and as Independent Executor under the Will of Sallie A. Rothermel, Appellant,**

v.

**Sarah Rothermel DUNCAN et al., Appellees.**

No. 6546.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 7, 1963.

Rehearing Denied March 6, 1963.

W. H. Betts, Hempstead, for appellant.

J. C. McEvoy, Hempstead, W. C. Mc-Clain, Conroe, Williams, Lee & Lee, Houston, for appellees.

McNEILL, Justice.

This will contest involves Sallie Rothermel's will, which left all of her property to her son, Louis F. Rothermel, and appointed him Independent Executor of her estate. This will was probated by the County Court on October 27, 1958. Within a year thereafter this suit, contesting its validity upon the grounds of mental incapacity and undue influence, was filed against appellant by appellees, who are the children of the late Bill Rothermel, the other child of Sallie Rothermel. The contest was denied in the County Court. Trial was to a jury in the District Court and the only issue submitted was whether the will was the result of undue influence exercised upon the deceased, Sallie Rothermel, by her son, the appellant. The jury having answered that the will was the result of such undue influence, judgment was entered favorably to the contestants and this appeal resulted.

The widow, Sallie Rothermel, and her own surviving offspring, the two sons, moved from Pennsylvania to Houston in 1920. The son Louis Rothermel, appellant, was married, and his mother and brother Bill, who was 16 years his junior, lived in the same house until 1934 when Bill married. For a few years then Mrs. Rothermel lived with Bill. The family was a close one and kept in touch with and helped each other. Since Bill was considerably younger than his brother, the mother leaned toward the older son for more help and assistance, especially in the earlier years of her widowhood. Bill was associated with his brother for 20 years in the very successful business of the Maritime Oil Company, which operated out of Houston transporting oil to foreign countries. In 1952 Louis and Bill became partners in the business that lasted until Bill's death in 1955. The mother lived alone for a period of time in the '50's and both sons and their families kept in close contact with and helped her. After Bill's death the mother, Sallie Rothermel, lived with her son Bill's widow, Bessie Rothermel, and the children, appellees, from October, 1955 to March, 1956. From March, '56 to October, '56 she lived with appellant. From October, '56 to October, '57 she lived in an old ladies' home in Houston. During all of this time the family frequently visited her. In October, '57 appellant, who owned a farm in Waller County, took his mother from the old ladies' home to his farm. This, he stated, was done at his mother's request. He had had for two or three years as an employee on the farm a single woman named Mary Blumberg. She lived in a 4-room house on the farm. His mother was brought to Mary's home, where she lived from that time until her death at the age of 94 years in October, 1958.

Appellant's brief assigns 39 points of error; but four have been expressly waived. It would be impossible in any reasonable space to deal at length with each of these points. However, we shall attempt to express our conclusions upon the controlling issues of this appeal. The first point urges

that the district court erred in failing to sustain his special exception to appellees' allegations of undue influence, asserting that they were mere conclusions and failed to allege facts or actions of appellant which destroyed the free will of testatrix. The allegations assailed are:

"B. If the said decedent did execute said will, she was unduly influenced to do so by the said Louis Rothermel and allowed the mind of such Defendant, on account of the lack of vigor of her own, to take the place of her own mind and to guide her in the making of such instrument without in fact assenting herself thereto, thus overcoming her free agency because of her age, weakness and fear, and the confidence which she placed in said Defendant."

The exception was first filed in the district court. Trial on the question of undue influence was held in the County Court on March 7, 1960, more than a year before this special exception was presented to the court. Rule 45, Texas Rules of Civil Procedure, provides that an allegation of legal conclusion is not objectionable when fair notice to the opponent is given. Since appellant has failed to show that he was surprised, or prevented from presenting his evidence, or in anywise injured by the ruling complained of, the point must be overruled. King v. Harris Co. etc., Dist., Tex.Civ.App., 210 S.W.2d 438 (441); Reed v. Markland, Tex.Civ.App., 173 S.W.2d 346; Southern Underwriters v. Hodges, Tex.Civ.App., 141 S.W.2d 707.

Complaint is made that the trial court erred in permitting appellees' counsel to qualify prospective jurors by requiring them to state that they would take into consideration the fact that the witnesses to the disputed will were, at the time of its execution, in the employ of appellant. The questioning to which appellant objects, including colloquy of counsel, is found on pages 17–22 of the Transcription of Voir Dire. Appellees' counsel stated " * * * we say that the will is the result of undue influence."

**402**

Appellant's counsel objected that appellees' counsel must define "the terms or the basis upon which they propose to contest the will." Appellees' counsel responded, "Well, I will be glad to go into that just a little bit." He then stated that the court will define the terms, but he asked the jury if in considering the issue they would "listen to all the evidence, (and) take into consideration" a number of facts, including "the witnesses, as to whether or not they were under the control, whose control they were under * * *." We think appellant's statement that opposing counsel must define "the terms of the basis upon which they propose to contest the will" was an invitation to go into the details and explain the circumstances "a little bit" as stated by appellees' counsel. Too, it is one thing to ask a juror if he will take certain facts into consideration and another as to the weight he would give such evidence. For this reason Lassiter v. Bouche, Tex.Civ.App., 41 S.W.2d 88, holding that the trial court did not abuse its discretion in refusing to allow prospective jurors to answer, in effect, what weight they would give oral evidence as compared to written evidence, is not in point.

█ Complaint is also made that in the voir dire examination appellees' counsel asked, "Will you also take into consideration, if selected on this jury, evidence of expressions that Mrs. Rothermel had previously made as to how she wanted her property to go, if such evidence should be offered before you?" The contest of the will was, as stated above, on two bases, mental incapacity and undue influence. It is urged by appellant that since the issue of mental incapacity was not submitted to the jury, the question on voir dire should not have been permitted over his objection. The record reflects no request made at the conclusion of the evidence that the jury disregard the expressions made by Mrs. Rothermel. Points 2 and 3 fail to show error.

Since the points attacking the verdict of no evidence, insufficient evidence, and that of being against the great weight and preponderance of the evidence, are vigorously urged, and a discussion of those points here will be an aid to understanding rulings hereinafter made on the evidence and other matters taking place at the trial, we will next discuss these points. The briefs, both original and reply, and the statements of facts have been carefully studied.

██ On the question whether the record raises the issue of undue influence, it was said in Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, at p. 1036: "Bear in mind that the jury has found such undue influence. We must therefore indulge the presumption that the jury believed and accepted all probative evidence tending to sustain its verdict." So considering the evidence, the facts substantially show: (1) that Sallie Rothermel, mother of appellant and grandmother of appellees, was a very old woman when she executed the will on January 30, 1958; that she was then old and feeble and hard of hearing, her eyesight was bad, her hands shook and she walked with a cane. She was suffering from arthritis and diabetes. After she was taken to the farm she never got out of the small tenant house except when she fell and broke a rib soon after she moved there. On that occasion she was taken to a hospital in Hempstead for two or three days because of the injury. (2) Sallie Rothermel, the deceased, was devoted to appellant, trusted him completely and relied entirely upon him to handle her affairs. He took care of all her business correspondence, affairs, and signed her checks. He kept all of her papers, including her wills (later better described herein) in his own safety deposit box. As previously stated, she lived the last year of her life on appellant's farm, in his employee's house and was physically unable to get outside. (3) Sallie Rothermel executed her will in 1939 by which she left all of her property equally to her two sons, appellant and Bill, appellees' father. Appellant testified he knew of only two wills made by his mother, the ones of 1939 and 1958. There was other testimony that she executed a will in 1938. There was further testimony that she had

executed a will some time between 1942 and 1943 witnessed by a Mr. and Mrs. Hill. The will presently involved was dated January 30, 1958. Testatrix discussed the preparation of this will with appellant only. This was done some time in the latter part of '57 or the early part of January, '58. The testimony in reference to this came only from appellant and his testimony thereon vacillated back and forth. He stated that his mother requested him to bring her old will of 1939 to her and after she had had it a few days she told him she wanted to make another will leaving everything to him. He then drew the will in Houston and either used the 1939 will, or one of his own, as a pattern. He stated he consulted no attorney, but said he added to the will the clause that if he should predecease his mother then the property would go to all of her grandchildren which would include appellees and the child and grandchildren of appellant. He stated that he took this will out to the farm and gave it to his mother, who kept it several days. Then, a short time before she became 94 years old, she advised him she wanted him to get Mary Blumberg and her brother, August Blumberg, who was another farm employee of appellant, to witness the will, which he did. The will was signed by his mother before these two witnesses of appellant. At the time he was in the house but not in the room where they were. (4) Immediately after the will was executed it was delivered by Sallie Rothermel to appellant. He took it and placed it in his safety deposit box and no one knew of its execution except the witnesses thereto and appellant until some time after his mother's death. The testatrix signed the will without comment at his suggestion. No one read the will or explained the will to her or saw her read it. She never mentioned the execution of this will except to Mary Blumberg. Appellant gave $1,000 to the witness Mary Blumberg shortly after the will was probated. (5) Sallie Rothermel was equally devoted to her two sons and she loved her grandchildren equally, and her 1939 will left her estate equally to her two sons. Disinterested witnesses had heard her declare numerous times that she intended to leave her estate equally to her grandchildren after her death. (6) Testatrix was proudly aware that appellant was a very successful business man and she knew the nature and extent of his wealth. If the 1939 will which appellant described had been left to be the last will of the deceased, one-half of her property would have passed to her son Louis, appellant, and the other half to the children of her son Bill, appellees here. She did not attempt to change this 1939 will for more than two and one-half years after her son Bill's death and then only after she had moved to appellant's country farm. Appellant did not suggest to his mother that an inheritance tax saving would exist if she left her 1939 will in effect. The testimony clearly raises the issue of undue influence, Long v. Long, supra.

◼ Against the above, appellant urges that the only direct testimony of the making of the questioned will was that of appellant and his witness Mary Blumberg, and it is said that their testimony was clear, concise and convincing; that the witness Blumberg is a disinterested one. It is true that no direct testimony controverts most of what was testified to by appellant and his witness. This sort of direct contradiction is in almost all such cases impossible. Proof of undue influence must come in most cases through circumstantial evidence. Truelove v. Truelove, Tex.Civ.App., 266 S.W.2d 491 (W.R.). The following testimony of Mary Blumberg is emphasized by appellant. She stated that the deceased told her, "I'm happy that I have my will fixed up like I want it, so that Louis can get what I want him to have. I think he's the—is the deserving one." This witness also stated that the deceased was a person of strong will and could see well. As stated later herein, we think the testimony of Mary Blumberg is subject to the charge of bias. Appellant testified that when his mother wanted to change her will in January, 1958, leaving everything to him, he reminded her that under the will (of 1939) she then had, one-half of her estate would go to the family

of her deceased son, Bill Rothermel, but in answer to him he quoted her as saying: "I know that, but I want you to have it. You can't tell what might happen to you, you might need it and I want you to have it * *. After you get through with it, you can leave it to—you can dispose of it any way you want,". The jury probably doubted, in view of the fact that she knew her son was wealthy and he was then 69 years of age, that she had any such belief or made such statement. Near the end of the trial, appellant clouded his last testimony, that he advised his mother that the 1939 will would pass one-half of her property to Bill's children. His last testimony on this was he did not discuss the terms of the 1939 will with her. Considering all of the evidence, we conclude that the finding of the jury is not subject to the charge of insufficiency of the evidence nor that of being against the great weight and preponderance of the evidence.

▪ The contested will was made January 30, 1958. Mrs. Rothermel died in October following. On December 1, 1958, appellant made out checks for $1,000 each, one to Mary Blumberg, a witness to this will, and one each to two nieces, two nephews, a daughter and two grandchildren, totaling $8,000.00. These checks were transmitted to the recipients by letters, one being written to Mary Blumberg and another to Bessie Rothermel, appellees' mother, for the benefit of her children, the two nieces and two nephews. While the witness Mary Blumberg was on the stand she testified without objection that she had received a letter from appellant with the $1,000 check shortly after testatrix died. When later in the trial appellant was examined about this check, his counsel objected that it was irrelevant, incompetent, immaterial and calculated to prejudice appellant before the jury, and pyramiding inferences upon inferences. The trial court allowed the testimony for the limited purpose of an admission against interest, showing bias or interest of the witness Mary Blumberg, and as a part of the circumstances surrounding the execution of

the will. In testifying further, appellant stated he wanted to give the whole story about payment of these sums of money, which he did *without objection*. He stated that his mother, not long before her death, told him she wanted him to give Mary Blumberg something as she had been very helpful to her. The letter to Mary Blumberg was never offered in evidence. Although the letter to Bessie Rothermel transferring checks for her children stated that it was the testatrix's wish that each of her grandchildren and great-grandchildren should have $1,000 out of her estate, appellant testified that the gifts to these nieces and nephews were out of his own generosity and not at the testatrix's request. Bessie Rothermel testified without objection that she knew nothing about the will until she received the four $1,000 checks from Louis Rothermel in the mail. The letter accompanying these checks was admitted over appellant's objection as set forth above. Appellant had himself, however, voluntarily testified to the same effect without objection previously.

Appellant insists that Chaddick v. Haley, 81 Tex. 617, 17 S.W. 233, is directly in point and holds that the evidence with reference to the payments of said sums of money, and the letter written to Bessie Rothermel were improperly admitted. The Chaddick case does not control the present one. When testatrix changed her will so as to eliminate her son Bill, and consequently his children, from sharing in her estate, and left all of it to her son, the appellant, he must have realized that in all probability these nieces and nephews, Bill's children, would be unhappy. Faced with this situation, it may have behooved him to send Mary Blumberg, who worked for appellant for years prior to a short time before the trial and who lived with testatrix for the year immediately before her death, the gift of $1,000. In view of the fact that appellant relied upon Mary Blumberg's testimony to sustain the will, it was proper for appellees to contend the money could have been given to her in order to influence her in-

terest in behalf of appellant. Mary Blumberg was not mentioned in the will. Her possible bias could be shown. McCormick & Ray, Evidence, Vol. 1, pp. 514, 516. See, also, Tex-Jersey Oil Corp v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062. The gift of $4,000 to the nieces and nephews could be said to have been for the purpose of keeping them from contesting the will. The will, so recently made, made no mention of them. Later though, these checks for the children were returned by their mother to appellant. Appellant himself having testified without objection to sending these checks, we fail to see how testimony by Bessie Rothermel to the same effect may be used to show material error. Sanger Bros. v. Craddock (Tex.Sup.), 2 S.W. 196; McKee v. Reed, Tex.Civ.App., 166 S.W.2d 353.

■ Appellant complains that appellees' counsel elicited from the witness Mrs. Hill testimony concerning the execution of a will by the deceased between 1941, or '43 and '45, and her testimony that testatrix stated to her, "I have a new grandchild and I am going to have to change my will because what little I have, and my bonds, I want to divide it equally, and would you sign— witness my will some time soon." This testimony was offered by appellees to show that testatrix told the witness she was leaving her property to her grandchildren, and in order to throw light on appellant's testimony when he said he knew of no wills other than those executed in 1939 and 1958. Appellees' witness Mrs. Bessie Rothermel was permitted to testify that she was a witness to the will made by testatrix in 1938 and knew about the one witnessed by Mr. and Mrs. Hill in 1941; and by inference stated that the 1938 will left her property to the grandchildren. Appellant examined the witness at length with reference to these wills. The circumstances fail to show error.

Complaint is also made the witnesses Mrs. Hill, Mrs. Rothermel and Mrs. Liverman were permitted over appellant's objections to testify that testatrix had stated in their presence long prior to the execution of

the 1958 will that she intended to devise her property to her grandchildren equally. While there was some reference to statements thus made many years ago in explanation of the circumstances of the earlier wills having been made, there was substantial testimony by these witnesses that within the last five years of the life of the testatrix she had made these same statements. Appellant relies upon the case of Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138 to exclude the testimony. On a careful examination, this case clearly upholds the admission of statements of the kind testified to. See 166 S.W. 1147. Ordinarily remote statements of this kind should not be admitted, however. See Vol. 1, p. 676, McCormick & Ray, Evidence, Sec. 896.

■ Appellant's 9th point states that the trial court erred in permitting appellees' counsel to elicit from their witness Mrs. Bessie Rothermel her testimony to the effect that her late husband, Bill Rothermel, had told her several times that the estate of testatrix was going to be equally divided among her grandchildren, over the objection that same was hearsay. We think the complaint takes the circumstances out of context. At that time the witness was relating her telephone conversation with appellant in December, 1958. In this conversation appellant wanted to know how the witness knew about the stock testatrix owned in the Insurance Company of North America. She replied she knew plenty about it and then stated that her husband Bill had always said that Grandma's estate was to be equally divided among her grandchildren, and that her stock was to go to her grandchildren. If the admission of this last statement was improper on the ground that it was hearsay, it certainly would be cumulative of much testimony to the same effect and its admission was therefore harmless.

■ Appellant also asserts that at the end of the evidence he requested an instruction which was refused:

"You are instructed that no statement or declaration made by a testator (or

testatrix) can be considered as evidence of undue influence and, in arriving at your answer to this special issue, you will not take into consideration any statement or declaration made by the testatrix, Sallie A. Rothermel, to any of the witnesses before you which are of different import than her will of January 30, 1958."

The instruction was properly refused. Scott v. Townsend, supra.

 Complaint is made that the court severely rebuked appellant's counsel when during a cross-examination by him of Mrs. Bessie Rothermel she was insisting upon making unresponsive answers and in getting before the jury matters she believed to be helpful to appellees' case, and appellant's counsel was attempting to dissuade such witness from continuing to do so. We have carefully examined this excerpt of the record and are satisfied that the complaint is not supported by the record. Appellant's counsel was arguing with the witness instead of requesting the court to direct her answers. The following reflects the colloquy:

"THE COURT: Just a minute, Counsel, Now, you just make your objection to the Court and don't argue with the witness.

"Go ahead. That's all. You have answered the question. Now, that's all. Let's move along.

"MR. BETTS: We take exception to the—

"THE COURT: You may have a bill.

"MR. BETTS: —manner of remonstrance by the Court. It is prejudicial to the defendant.

"THE COURT: You may have a bill, two of them, as far as the Court is concerned, Counsel. Move along.

"MR. BETTS: It is calculated to prejudice the jury.

"THE COURT: Yes, sir. You may have a bill. Move along."

From a reading of the entire statement of facts, one is impressed by the fairness and clarity of the trial court's rulings. In mentioning that counsel may have a bill, "two of them", is some indication that he may have become irritated by the conduct of counsel, but it must be recognized that the decorum and control of the courtroom is in the trial court's hands and he deserves reasonable discretion in regard to these matters. The proceeding does not reveal error.

 Appellant asserts that it was error for the trial court to allow appellees, for impeachment purpose, to introduce in evidence appellant's pleadings, which had been stricken on exception, to the effect that stock owned by testatrix in the Insurance Company of North America had been purchased, at least partly, by insurance money which testatrix received upon her late husband's death in the early part of this century. This point fails to reflect error. McCormick & Ray, Texas Evidence, Vol. 1, Sec. 696, p. 544.

 Complaint is made of the charge of the court defining undue influence. It is said that the instruction given constituted a charge upon fraud and since no fraud was alleged the charge was improper. The following constitutes the entire instruction of the court on undue influence:

"You are instructed that 'undue influence', as used herein, is defined as being any fraudulent or designing means employed upon and with the testatrix by which, under circumstances and conditions by which such testatrix was surrounded, she could not well resist and which controlled her volition and induced her to do that which she otherwise would not have done. In this connection, you are instructed that weakness of body and mind, whether produced by the infirmities of age or by disease, may be considered as a material

circumstance in determining whether the testatrix was in condition to be susceptible of undue influence.

"You are further instructed that undue influence can be established by circumstantial as well as by direct evidence. Opportunity to exert undue influence may be considered, but you are instructed that undue influence cannot be inferred alone from motive or opportunity, but there must be some testimony to show that undue influence not only existed but that it was exercised with respect to the making of the will."

The first sentence of this instruction is practically the same as that found in Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208 (214), and the balance of the definition was taken verbatim from the charge approved in Truelove v. Truelove, supra, 266 S.W.2d at p. 494. Since our courts hold that undue influence is itself a species of legal fraud, Bradshaw v. Seaton, Tex.Civ.App., 60 Tex. Civ.App. 278, 128 S.W. 943; Smith v. Mann, Tex.Civ.App., 296 S.W. 613, we think the charge given is not susceptible to the criticism that it constituted a charge upon fraud. It is said that the court should have defined the phrase "designing means". No definition was tendered. The complaint is unsound. Rule 279, T.R.C.P. The other requests for special instructions were properly refused as they would tend to overlap the charge given and confuse the jury. Gallagher v. Neilon, Tex.Civ.App., 121 S. W. 564 (569).

Appellant assigns 9 points against statements made in opposing counsel's closing argument. They are summarized as follows: he improperly contrasted the wealth of the parties; appellant was grasping and would wrong his own daughter; that appellant has schemed for months to isolate testatrix and take her to his farm and withhold contacts with her friends in order to subject her to undue influence; that appellant gave Mary Blumberg $1,000.00 for the purpose of obtaining favorable testimony and that appellant "knew that the $1,000 paid to one of the witnesses, that it wasn't going to hurt anything"; that appellant had destroyed a previous will, when a disinterested witness testified testatrix destroyed it herself; that it was improper for appellees' counsel to argue to the jury they were acquainted with the law of Descent and Distribution and urge that the will be set aside; it was improper to tell the jury that appellant knew in absence of the will that under the law of Descent and Distribution his brother's children would take one-half and he one-half and was an appeal to sympathy and inflammatory; it was error for counsel to comment on failure of appellant to put August Blumberg on the stand, and implied that his testimony would be unfavorable to appellant. Transcript of the closing arguments is before us.

█ Only twice did appellant make objection at the time the complained of argument was made. The first is in connection with the 18th point which complains of the statement of appellees' counsel that appellant destroyed the 1939 will. The argument complained of, in referring to the 1939 will, was that appellees' counsel stated that appellant "didn't see fit to preserve it, but was rather willing to rely upon the—" when objection was made:

"MR. BETTS: Your Honor, that is a misstatement of the record. The record shows that Mrs. Sallie Rothermel told him that she destroyed it.

"THE COURT: The jury remembers the testimony. Go ahead counsel.

"MR. McCLAIN: If the record shows it, if there's any such testimony as that in the record, I didn't hear it, and you gentlemen perhaps did. I didn't."

No request was made by appellant to instruct the jury to not consider the remark. This was the burden of appellant. 41–B Tex.Jur., Sec. 289, pp. 348–350. In such situation he must have assented to the

court's comment. Texas & P. Ry. Co. v. Mix, Tex.Civ.App., 193 S.W.2d 542(10).

■ The other objection promptly made to argument is to that assailed in appellant's 19th and 20th points. The following discloses the record:

"We say that under the previous instrument, that the grandchildren would be participating and now he is ahead any way you go. Even upon the finding here, he still gets half of it because under the—

"MR. BETTS: Your Honor, we object to that argument. It is advising the jury of the effect of their answer.

"MR. McCLAIN: Well, don't pay any attention to that, gentlemen,—

"THE COURT: Sustained. You won't consider it.

"MR. McCLAIN: —what I said, and you forget what I said, but we will say this. He did admit under the old will that he said as it existed, he admitted that he got half and they got half. That's what he said. Under the law of descent and distribution, as you know it is, as you know the law of descent and distribution, that upon—

"MR. BETTS: —and we ask that the jury be instructed not to consider it for any purpose, and we also request that the jury be instructed not to consider the statement just made by counsel with respect to the effect of their answer.

"MR. McCLAIN: I have told them not to—

"THE COURT: The Court has already instructed them upon it.

"MR. BETTS: Note our exception."

The jury must have realized, as reasonable persons, that if they answered the only issue given them, that the 1958 will was the result of appellant's undue influence, appellees would share in their grandmother's estate. Barksdale v. Dobbins, Tex.Civ. App., 141 S.W.2d 1035 (1040). But if there was error, the court's instruction along with counsel's request that the jury "forget" what he said eliminated the error. 41–B Tex.Jur., Sec. 298, pp. 365, 366.

■ Having read the entire statement of facts and the entire closing arguments, it is believed that the other arguments attacked were warranted by the evidence. It is counsel's right to draw conclusions from the evidence, although those conclusions may not be the most reasonable ones. Piedmont Fire Ins. Co. v. Dunlap, Tex.Civ.App., 212 S.W.2d 996; In re Northcutt's Estate, Tex.Civ.App., 340 S.W. 2d 510. It was shown that August Blumberg, appellant's employee, was in attendance at court. That appellees' counsel called attention to the fact appellant failed to put his employee on the stand was fair comment. Tex-Jersey Oil Corp. v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R. 2d 1062.

■ It is stressed that the comparison of financial circumstances between appellant and appellees in counsel's closing argument was inflammatory and prejudicial to appellant. The facts show that testatrix loved her sons and grandchildren equally, and at the time she made the will in contest appellant was practically 70 years of age and well fixed. Though appellees were not in straitened circumstances, it was clear that they had considerably less than did appellant—and were a half century younger. In our judgment the comparative financial circumstances of the parties, their health and age were subjects, in the circumstances of this case, upon which to make fair comment. Craycroft v. Crawford, Tex.Com. App., 285 S.W. 275; 95 C.J.S. Wills § 463, p. 447. The matter was not dwelt upon nor unduly emphasized.

■ All items of argument criticized against which no objection was made at the time, if improper, could have been corrected by instruction from the court. 41–B

Tex.Jur., Sec. 297, pp. 363–365. Failure to object to such argument at the time made waives any possible error. Wade v. T. E. I. A., 150 Tex. 557, 244 S.W.2d 197. The trial court's judgment is not subject to the points assigned, and is therefore affirmed.