**TEXAS A & M UNIVERSITY et al., Appellants,**

v.

**Joyce F. WARD et al., Appellees.**

**No. 7899.**

Court of Civil Appeals of Texas, Beaumont.

Jan. 27, 1977.

Rehearing Denied Feb. 17, 1977.

Clyde M. Marshall, Jr., Fort Worth, Herman I. Little, Jr., Asst. Atty. Gen., Austin, for appellant.

D. Brooks Cofer, Jr., Travis Bryan, III, Bryan, for appellee.

DIES, Chief Justice.

This is a will contest case. Patricia Aileen Ward, age nineteen, was killed in an

automobile accident on January 15, 1974. She was a student at Texas A & M University, and at the time of her death was returning to College Station from Dallas after the Christmas holidays to commence the second semester of her sophomore year.

Proponent George N. Clawson, the named executor, filed the instrument dated August 26, 1973, for probate as the Last Will of Patricia Aileen Ward. Contestants were Joyce F. Ward, decedent's mother, and Louise Powell Ward, a half-sister of decedent.

Texas A & M University, the trustee of a charitable trust created in the will, joined as a Proponent; Attorney General John Hill, a necessary party to the will contest, pursuant to Tex.Rev.Civ.Stat.Ann. art. 4412a, also became a Proponent of the will. Trial was to a jury which found the will to have been the product of undue influence by George N. Clawson, and the County Court of Brazos County entered its judgment on the verdict denying probate of the will. From that judgment, Texas A & M University, Attorney General John Hill, and Mr. George N. Clawson perfect this appeal.

For clarity, Texas A & M, General Hill, and Mr. Clawson will be referred to as "Proponents" or by name, while Joyce F. Ward and Louise Powell Ward will be referred to as "Contestants" or by name.

Proponents urge there is no evidence to support the jury's finding of undue influence. In passing on this point, we may consider only the evidence and inferences therefrom which tend to support the verdict. *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965).

Mrs. Jessie Kimbley was the apartment manager of Embassy Apartments in Irving in August 1973 when Patricia Aileen came to stay with her father, John Ward, who lived in the complex. The father introduced Patricia Aileen to Mrs. Kimbley. Her father, John Ward, passed away, and then Patricia Aileen introduced the witness to her uncle, Proponent George Clawson. "She brought him to the office when she asked me if I'd seen her will." Mrs. Kimb-

ley did not recall the date but (Patricia) "[s]aid that she was making out a will and wanted to know if I would sign it until she could get another one made out." Patricia gave her the will; the witness read it; saw Patricia sign it; and then the witness signed it. Patricia did not appear to be on drugs or alcohol but seemed sad. Proponent Clawson "said Patricia wanted—was making out—or had this will made out and wanted to know if I'd sign—witness the will." Patricia seemed a bright girl and of sound mind. This was the only occasion she had a conversation with Patricia. Clawson signed the will before the witness did. Patricia also asked one Jackie Egans, who lived in the complex, to sign as a witness. It was the witness' opinion that Patricia knew what her estate consisted of and what she wanted to do with it. Proponent Clawson said nothing to Patricia about what she ought to do or direct her in any way.

Jackie Egans worked with Patricia at El Chico's restaurant. She recalled that Patricia asked her to sign the will in August 1973. This occurred in the manager's office. Patricia asked her to read it before signing. She thought Patricia "knew what she was doing all the time." On cross examination she indicated that it was Proponent Clawson who told her where to sign. She had seen Clawson visit Patricia at El Chico's, and they would talk "in the little room." At the signing of the will Proponent Clawson did not tell Patricia what to do. Patricia did not appear to be under the "influence of anything, such as, drugs or alcohol."

Joyce Ward, Patricia's mother, testified she and John G. Ward, Jr., Patricia's father, were divorced in October of 1967. She was awarded Patricia's custody. Patricia was about twelve years old then. She had no other children, but John Ward had a daughter by a former marriage, Proponent Louise Powell Ward, about twenty-seven years old. About three weeks before John Ward's death in August 1973, Patricia ceased living with her mother. Proponent George Clawson is the husband of Joyce Ward's sister, and they (the Clawsons) live in Los Angeles.

At the time of John Ward's death, the Clawsons were in Joyce Ward's apartment on vacation. After John Ward's death, Clawson told Joyce she was still beneficiary on two of her ex-husband's insurance policies and "you will, of course, turn this money over to Patsy [decedent] immediately." She refused, and Clawson was "absolutely furious, irate; he screamed at me in a very very ugly tone that if I didn't turn those over immediately, he was going to tell all of my sisters and brothers . . . how greedy I was."

Testimony from the Registrar at A & M University seemed to indicate that Patricia's grades were not as good as they should have been considering she graduated high in her class in high school.

Barry J. Davis, a student at A & M was a friend of Patricia. In the summer of 1973 Patricia had called him "crying hysterically" that "she kept this desk calendar in the form of a diary. And in it, she had written what, to us kids, would be the worst thing that you could let your parents know about—about the things you were doing." Her mother (Joyce) found the diary and told her father (John) about it. Because of this, Patricia had moved out of her mother's house.

In September of 1973 when Patricia returned to A & M, she was "really scared" because of her father's death. She talked of "Uncle George" (Proponent Clawson) and said Clawson advised her against taking out the insurance policy (the largest asset in her estate).

During the 1973 Christmas break Barry received a letter from Patricia. It said, in part:

"'I spent all Thursday morning downtown with my uncle. God! Does that man aggravate me! He is so authoritative & pushy. He expects you to hop at his every command & he doesn't seem to realize that I have other things to do (such as work) other than what he says. We've decided not to go to court to get my appointment.'" etc.

Two letters identified as written by Patricia to herself indicate she might have had

sex, dope, and alcohol at times, and it is fair perhaps to comment that they express unhappiness and dissatisfaction with herself. These "letters" were not dated, but Barry perhaps connected them somewhat near the signing of the will. Barry did know she had a will.

William Weiser, a student at A & M, testified that Patricia's feeling toward her mother (Proponent Joyce Ward) was not good; that he knew Patricia had a will, and she had told him of the bequest to A & M; that Patricia had told him of her desire to set up a scholarship fund for female students. He thought of Patricia as being strong willed.

C. A. Noble married Contestant Joyce Ward's sister. After Patricia's funeral Proponent Clawson stated he felt a responsibility to see that Patricia's will was probated.

Truxton Shaw, an attorney and C.P.A., had been acquainted with John Ward and Contestant Joyce Ward for many years. Shaw's wife is Joyce's aunt. Shortly after John's funeral, Shaw and Proponent Clawson had a conversation. Clawson asked Shaw if he believed John intended to change the insurance policies payable to Contestant Joyce to provide that Patricia be the beneficiary. Shaw responded that if John had wanted to change them he would have. Clawson also asked Shaw if Shaw thought they should be made payable to John's daughter, Patricia. Shaw responded he knew of no moral reason for it. Shaw said John's death depressed Patsy. Shaw received a letter from Proponent Clawson (Contestant's Exhibit No. 1) reading "Sunday 8–26 Truxton [Shaw], I dashed this off under Patsy's guidance to be effective until a neater one can be worked out later. I hope you will accept and understand. George [Clawson]." Attached to the letter was a copy of Patricia's will. Shaw wrote A & M's Dean of Admission (who was his wife's nephew) that A & M had an interest in Patricia's will. This was January 23, 1974.

Paul Rosamond, a salesman with New York Life Insurance Company, talked with

Patricia after her father's death. "And she knew exactly what she wanted to do with her pre-medical training, and later on medical school." Rosamond later talked with Patricia when Proponent Clawson was present. "I [Rosamond] recommended that she [Patricia] make a Will." Patricia responded that she had already thought about that. Patricia was saddened by her father's death but alert. "She was a very sharp young lady." Rosamond suggested she purchase life insurance and that Joyce, the mother, be beneficiary. She (Patricia) said, "[W]ell, no; I don't want to leave it there." Rosamond suggested a church or charity as beneficiary. Proponent Clawson was present and said the policy should not be purchased.

Later Rosamond went to College Station, took her to dinner and again discussed Patricia purchasing insurance. A week later at Rosamond's home, she telephoned, said she desired a policy and would come to Rosamond's home. She and a friend, Jim Gregory, came, signed the application, discussed the beneficiary, and Patsy said she wanted it to be her "estate." Rosamond advised against this, but Patricia said, "I already have a Will." She said, "[Y]es, I insist on it." Patricia paid him four years premiums out of the money her father left her, the premiums amounting to about $1,300. The policy was never delivered to Patricia. After her death, Rosamond delivered it to Clawson's attorney at Clawson's direction.

James F. Gregory, director of personnel for a Texas company, knew Patricia well because Gregory's daughter was a friend of Patricia. He thought Patricia was a "brilliant young lady," went to Rosamond's house with Patricia at her request. He remembers Patsy wanted the policy payable to her estate. "I would have to say Patsy was pretty firm in anything she said and did." Patricia gave him a copy of the will, but he didn't read it until after her death. He was aware Patricia was having trouble making passing average at A & M. Patricia had a "strained" relation with her mother, Contestant Joyce.

George Clawson, Proponent, resides in Los Angeles, California. He is an associate professor at California State College. He is a graduate of Baylor; never attended A & M. His wife and Contestant Joyce are sisters. He arrived in Texas for a vacation just a few hours before John (Patricia's father) died, August 20, 1973. He stayed in Texas eight or nine days. He came back to Texas for two days during the Christmas holidays in 1973 (when Patricia executed the will). After John's death, he found that two of John's insurance policies still named Joyce (the ex-wife) as beneficiary. He suggested to Joyce that Patricia get the proceeds of these policies. Joyce at first agreed, then later recanted. Joyce called him after Patricia's death. He came to Texas, went to the funeral home, where he found the will and gave it to his attorney.

In *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963), the testatrix was ninety-three years of age, and suffered from various maladies. She was living on her son's farm in Waller County. In 1939 she had executed a will leaving her estate equally to her sons, Bill and Louis. In 1955 Bill died; thereafter, she told Louis she wanted to make a new will leaving him all her estate. Louis drew the will, took it to the Waller County farm, and his ninety-three year old mother signed it, returning it to Louis. After the mother's death, probate of the will was contested. A district court jury found that the will was the result of undue influence, and this court affirmed (365 S.W.2d 398).

In reversing the Court of Civil Appeals, the Supreme Court (at 922) laid down these rules:

"Thus, before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) The existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence."

See also *Dulak v. Dulak*, 513 S.W.2d 205, 209 (Tex.1974).

These cases establish that in Texas a person of sound mind has a perfect legal right to dispose of his or her property as he or she wishes, and that a jury's feeling that the disposition should have been different is immaterial. When we examine the evidence above set out and the inferences most favorable to support contestants, as we must, the most that contestants have proven is that perhaps Proponent Clawson is a man of strong will, and Patricia was troubled at the time of the execution of her will. There is absolutely no proof Patricia would not have executed this will but for undue influence exerted by Clawson which "overpowers the mind", *Rothermel, supra.*

We therefore sustain this point of error and remand this cause to the Probate Court of Brazos County, Texas, with instructions to probate the instrument dated August 26, 1973, as the Last Will of Patricia Aileen Ward.

REVERSED and REMANDED with instructions.

STEPHENSON, J., not participating.